1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   DAVID JAMES HARNEY,              )   Case No. CV 06-2127-TJH (OP)
                                      )
12                  Plaintiff,        )
            v.                        )   MEMORANDUM AND ORDER
13                                    )   DISMISSING SECOND AMENDED
     MELVIN HUNTER, et al.,           )   COMPLAINT WITH LEAVE TO
14                                    )   AMEND
                    Defendants.       )
15   _____)

16                              I.

17                        **PROCEEDINGS**

18       On April 24, 2006, David James Harney ("Plaintiff"), filed a pro se

19   Civil Rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff is civilly

20   committed as a Sexually Violent Predator ("SVP") and is currently housed at

21   Coalinga State Hospital ("CSH"). He was previously housed at Atascadero

22   State Hospital ("ASH"). In his Complaint, Plaintiff sought actual and

23   compensatory damages against twelve state employee Defendants in their

24   individual and official capacities. On May 11, 2006, the Court dismissed the

25   Complaint with leave to amend based on Eleventh Amendment grounds. The

26   Court also noted that the Complaint set forth facts and a legal theory which, if

27   true, would support a claim for relief.

28       On November 2, 2006, Plaintiff filed a First Amended Complaint

     ("FAC") pursuant to 42 U.S.C. § 1983, naming twenty-five Defendants in

1  their individual and official capacities.  On December 13, 2006, the Court

2  dismissed the FAC with leave to amend based on Eleventh Amendment

3  grounds.

4        On January 22, 2007, Plaintiff filed his Second Amended Complaint

5  ("SAC") pursuant to 42 U.S.C. § 1983, naming twenty-five Defendants, all

6  employed at ASH and all sued only in their individual capacities.[1]  On June

7  27, 2007, Defendants filed a Motion to Dismiss Plaintiff's Second Amended

8  Complaint ("MTD") along with a Request for a More Definite Statement, and

9  a Request for Consolidation with the case of Hydrick v. Wilson, Case No. CV

10  98-7167-TJH (RNBx) or in the Alternative for a Stay Pending the Outcome of

11  Hydrick v. Wilson.  On November 14, 2007, Plaintiff filed his Opposition to

12  Defendants' Motion to Dismiss ("Opposition").  On November 28, 2007,

13  Plaintiff filed an Addendum to his Opposition.  On January 18, 2008,

14  Defendants filed their Reply to Plaintiff's Opposition.  On January 31, 2008,

15  Plaintiff filed a Reply to Defendants' Reply.  Thus, this matter now is ready

16  for decision.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  ————————————————

25     [1]  The Court notes that the claims and facts set forth in the SAC now bear

26  little resemblance to those set forth in either the Complaint or the FAC.  Thus,

27  the Court's prior assessment that the Complaint set forth facts and a legal theory which, if true, would support a claim for relief, is inapplicable to the

28  current SAC.

1

## II.

## BACKGROUND

After carefully reviewing the SAC, it appears that Plaintiff actually is alleging five claims:[2]

### Claim 1 - Denial of Access to Courts:

Plaintiff claims his First and Fourteenth Amendment rights were violated by Defendants' policies, practices, and procedures, which arbitrarily restricted his access to the courts. (SAC at 10.) Specifically, as a result of medical attention he claims was untimely, inadequate, and negligently provided, he filed "numerous Patients' Rights Complaints" which were "lost, delayed and/or ignored," thereby denying him access to the courts. (Id.) He also claims there was no legal mail tracking system in place to ensure documentation of sending and receiving legal mail. (Id. at 10-11.) This claim is brought against Defendants Hunter, Judd, Gomez, and French (id.);

### Claim 2 - Search and Seizure:

Plaintiff claims his Fourth Amendment right to be free from unreasonable search and seizure was violated when he was forced to undergo unannounced weekly searches of his personal property. (Id. at 12-13.) This claim is brought against Defendants Hunter, Judd, Gomez, and French (id. at 13);

### Claim 3 - Retaliation:

Plaintiff claims he was subject to the unreasonable searches and seizures and additional aggressive "shake downs" of his personal property and area, and was threatened with loss of his access level, and actually

---

[2] In the SAC, Plaintiff numbers his claims I, II, III, and IV. However, a close reading of the claims suggests that there are actually five claims as set forth herein.

3

experienced loss of his access level and other punitive actions, in retaliation for his medical condition placing "additional and onerous responsibilities on unit staff." (Id. at 12.)  This claim is brought against Defendants Hunter, Judd, Gomez, and French (id. at 13);

**Claim 4 - Deliberate Indifference:**

Plaintiff claims his Eighth and Fourteenth Amendment rights were violated by Defendants' deliberate indifference to his medical needs. (Id. at 14.)  Specifically, he claims that after he suffered a calf injury on December 27, 2003, he was given medical attention by Defendants but such attention was untimely, inadequate, and negligently provided. (Id.)  He also alleges that the recommendations of certain specialists were ignored, and that treatment was denied, delayed, or changed over time, resulting in further injury requiring surgery. (Id.)  This claim is brought against all Defendants (id. at 14-22); and

**Claim 5 - Procedural and Substantive Due Process:**

Plaintiff claims his Fourteenth Amendment procedural due process rights were violated by Defendants' failure to respond to his complaints at each level of review.  He also appears to be claiming that Defendants violated his substantive due process rights when Defendants used their positions to punish Plaintiff and permitted him to be punished without due process.  He also specifically claims that Defendant Towle failed to notify the ASH Pain Management Team of a decision to terminate his prescribed pain medication. (Id. at 23-24.)  These claims are brought against Defendants Hunter, Gomez, French, and Towle. (Id.)

Defendants raise the following nine issues either as grounds for dismissing Plaintiff's SAC or for relief:  1) the statute of limitations bars Plaintiff's claims; 2) Plaintiff's claims fail to the extent they are based on a theory of respondeat superior; 3) Plaintiff's § 1983 claims fail to state a claim

on which relief can be granted; 4) Defendants are entitled to qualified immunity in their individual capacities; 5) Plaintiff fails to state a claim for substantive due process violations; 6) Plaintiff fails to state a retaliation claim; 7) the SAC is vague and ambiguous; 8) the SAC seeks improper relief; and 9) the matter should be consolidated with Hydrick v. Wilson.  (MTD at i-ii.)

## III.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of a statement of claim for relief.  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  A plaintiff's allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff.  See Love v. U.S., 915 F.2d 1242, 1245 (9th Cir. 1989).  Since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt.  See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

With respect to Plaintiff's pleading burden, the Supreme Court recently held that while a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citations and footnote omitted), abrogating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80

1    (1957) (dismissal under Rule 12(b)(6) is appropriate "only if it is clear that no
2    relief could be granted under any set of facts that could be proved consistent
3    with the allegations.")  The <u>Bell Atlantic</u> Court further explained in a
4    footnote:

5         While, for most types of cases, the Federal Rules eliminated the
6         cumbersome requirement that a claimant "set out in detail the
7         facts upon which he bases his claim," Rule 8(a)(2) still requires a
8         "showing," rather than a blanket assertion, of entitlement to
9         relief.  Without some factual allegation in the complaint, it is
10        hard to see how a claimant could satisfy the requirement of
11        providing not only "fair notice" of the nature of the claim, but
12        also "grounds" on which the claim rests.

13   <u>Id.</u> at 1965 n.3 (citations omitted).

14                                    **IV.**

15                              **DISCUSSION**

16   **A.    Statute of Limitations.**

17        Defendants contend that Plaintiff's claims, based on an injury that he
18   incurred on December 27, 2003, or at varying times between 2003 and 2004,
19   are barred by the applicable two-year statute of limitations.  Plaintiff alleges
20   continuing violations from December 27, 2003, to the present.

21        Defendants cite to <u>Nesovic v. U.S.</u>, 71 F.3d 776 (9th Cir. 1995) for the
22   proposition that the continuing wrong theory does not apply when the wrong
23   committed was a single act.  <u>Nesovic,</u> 71 F.3d at 778.  In <u>Nesovic,</u> the IRS
24   assessed taxes, penalties and interest against the plaintiff for unpaid taxes
25   between 1977 and 1983.  The government recorded a lien against the property
26   on March 31, 1988.  On May 26, 1993, the plaintiff filed suit seeking to quiet
27   title.  The court dismissed the suit as time-barred, finding that the claims
28   accrued in 1985, when the taxes were assessed, and that the wrong

1    complained of, the assessment of taxes, was a single act, which in turn created
2    the lien and caused the alleged harm – the "ill effects from an original
3    violation." Id. (citation omitted). The Ninth Circuit noted that it had
4    previously defined the continuing wrong doctrine as involving "repeated
5    instances or continuing acts of the same nature, as for instance, repeated acts
6    of sexual harassment or repeated discriminatory employment practices." Id.
7    (internal quotation omitted).

8          The Court finds that the wrongs complained of in this action more
9    closely resemble the type of wrongs subject to the continuing wrong doctrine.
10   Accordingly, for the purposes of this Motion to Dismiss only, the Court will
11   assume without deciding, that Plaintiff's claims are not barred by the statute
12   of limitations.

13   **B.    Respondeat Superior.**

14         Supervisory personnel are not individually liable under § 1983 on a
15   theory of respondeat superior or vicarious liability in the absence of a state
16   law imposing such liability. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691,
17   694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Redman v. County of San
18   Diego, 942 F.2d 1435, 1446 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642,
19   645-46 (9th Cir. 1989). A supervisory official may be personally liable under
20   § 1983 only if he or she was personally involved in the constitutional
21   deprivation, or if there was a sufficient causal connection between the
22   supervisor's wrongful conduct and the constitutional violation. See Redman,
23   942 F.2d at 1446-47; Hansen, 885 F.2d at 646; Taylor v. List, 880 F.2d 1040,
24   1045 (9th Cir. 1989).

25         Of the claims discussed below, Claims 1, 2, and 3 are brought only
26   against supervisory Defendants Hunter, Judd, Gomez and French. Claims
27   5(a) and 5(b) are brought against supervisory Defendants Hunter, Gomez, and
28   French. Because Claims 1, 2, 3, and 5(a) and 5(b) all fail to state facts

1   sufficient to state a claim, there can be no supervisory liability as to those
2   claims.
3        Claim 4 is brought against all Defendants including supervisory
4   Defendants Hunter, Gomez, Judd, French, Lapp, Shelton, Walters, Moore,
5   Lee, Janice, Griffith, Picanso,[3] and Donahue.[4]  Respondeat superior with
6   respect to this Claim is discussed in Part IV.C.4, _infra_.

**C.   The Sufficiency of Plaintiff's Claims.**

**1.   Claim 1 - Access to Courts.[5]**

9   Plaintiff contends that the policies and procedures of supervisory
10  Defendants Hunter, Judd, Gomez, and French denied him access to the courts,
11  including his right to challenge the various institutional policies and
12  procedures themselves.  (SAC at 10.)  Specifically, he claims that numerous
13  "Patients' Rights" complaints that he filed were lost, destroyed, or ignored by
14  Defendants, in part because there was no legal mail tracking system.  (_Id._)
15       "It is now established beyond doubt that prisoners have a constitutional
16  right of access to the courts."  _Bounds v. Smith_, 430 U.S. 817, 821, 97 S. Ct.
17  1491, 52 L. Ed. 2d 72 (1977).  However, in order for Plaintiff to establish _any_
18  denial of access claim, Plaintiff must show that he suffered an "actual injury"
19  as a result of the Defendants' actions.  _See Lewis v. Casey_, 518 U.S. 343, 354-
20  55, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); _see also Simmons v._
21  _Sacramento County Super. Ct._, 318 F.3d 1156, 1159-60 (9th Cir. 2003)
22  (applying access-to-court cases to pretrial detainee).
23       Here, the SAC does not allege that any actions taken by Defendants

---

[3] Identified by Defendants as Micanso.  (MTD at 9.)

[4] These are the individuals Defendants claim are the supervisory
Defendants.

[5] This claim is raised in the SAC under Claims I and II.  (SAC at 10, 12.)

1  resulted in an actual injury, e.g., prevented Plaintiff from filing a habeas
2  petition or civil rights action.  Indeed, Plaintiff's demonstrated ability to file
3  this action appears to undermine any claim by him that any actions by
4  Defendants prevented his access to the courts.  See Lewis, 518 U.S. at 356-57.

5      Accordingly, the Court finds that Plaintiff's allegations, even when
6  taken as true, are insufficient to state a claim based on denial of access to
7  courts.

8      **2.    Fourth Amendment Searches and Seizures.**[6]

9      As noted above, Plaintiff has been civilly committed under California's
10  Sexually Violent Predator Act ("SVPA").  As such, his status is more
11  analogous to that of a pretrial detainee than that of a prison inmate.  See
12  Youngberg v. Romeo, 457 U.S. 307, 321-22, 102 S. Ct. 2452,  73 L. Ed. 2d 28
13  (1982) ("Persons who have been involuntarily committed are entitled to more
14  considerate treatment and conditions of confinement than criminals whose
15  conditions of confinement are designed to punish."); Page v. Torrey, 201 F.3d
16  1136, 1140 (9th Cir. 2000) (detention pursuant to the SVPA "is not part of the
17  punishment for [a] criminal conviction but rather a civil commitment for non-
18  punitive purposes."); see also Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir.
19  2000) (applying Youngberg standard to persons civilly committed under
20  Washington's sexually violent predator act).

21      The Fourth Amendment protects pretrial detainees and prisoners from
22  "unreasonable" searches and seizures during their involuntary confinement.
23  Bell v. Wolfish, 441 U.S. 520, 558-59,  99 S. Ct. 1861, 60 L. Ed. 2d 447
24  (1979).  In Bell, the United States Supreme Court held that random,
25  warrantless, suspicionless searches of the living areas of pretrial detainees and
26  prisoners by their state custodians do not violate the Fourth Amendment

27  _____

28      [6] This claim is raised in the SAC under Claim II. (SAC at 12.)

1   because such searches are non-punitive restrictions that are reasonably related

2   to the state's legitimate government interest to promote security and order. <u>Id.</u>

3   at 544-48. Further, the <u>Bell</u> Court expressly stated that "[d]etainees' drawers,

4   beds, and personal items may be searched" during such searches. <u>Id.</u> at 557.

5          In light of <u>Bell</u>, Plaintiff fails to state a Fourth Amendment claim. The

6   "unannounced" searches he complains about do not violate the Fourth

7   Amendment's proscription against unreasonable searches because as

8   described in the SAC, the subject searches are substantively identical to the

9   searches condoned in <u>Bell</u>. Further, the subject searches are reasonably

10  related to the State's legitimate governmental interest of promoting security

11  and order in ASH against persons like Plaintiff who have been adjudged as

12  SVPs and civilly committed under the SVPA because they are dangerous.

13  Indeed:

14          [California's SVPA] provides a process for the civil commitment of

15          sexually violent predators, generally defined as persons who have

16          received a determinate prison sentence for conviction of a sexually

17          violent offense against multiple victims and who have been

18          diagnosed with a mental disorder that makes the person a danger to

19          the health and safety of others due to the likelihood of renewed

20          sexually violent criminal behavior. Welf. & Inst. Code § 6600(a).

21  <u>Munoz v. Kolender</u>, 208 F. Supp. 2d 1125, 1137 (S.D. Cal. 2002); <u>see also</u>

22  <u>Woodward v. Mayberg</u>, 242 F. Supp. 2d 695, 703 (N.D. Cal. 2003). Thus, to

23  the extent Plaintiff appears to claim that these searches are "unreasonable"

24  merely because they were "unannounced," he fails to state a Fourth

25  Amendment claim under <u>Bell</u>.

26          Alternatively, regardless of whether the subject searches were

27  "unannounced," Plaintiff's conclusory allegation that the searches were

28  "unreasonable" fails to state a claim in the absence of some factual averments

10

1  that give Defendants some minimal notice and description of what, beyond
2  their unannounced aspect, allegedly made the searches themselves
3  "unreasonable." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).
4  While § 1983 civil rights complaints are no longer subject to a "heightened
5  pleading standard" and must include only "a short and plain statement of the
6  claim" under Federal Rule of Civil Procedure 8(a)(2), this does not mean
7  conclusory allegations are sufficient. On the contrary, the short and plain
8  statement of the claim must still contain material factual averments, not just
9  conclusory allegations. See Galbraith v. County of Santa Clara, 307 F.3d
10 1119, 1121-22, 1127-28 (9th Cir. 2002) (civil rights complaint sufficiently
11 pled § 1983 Fourth Amendment claim against county and county coroner
12 where complaint had factual averments that described deficiencies with
13 coroner's autopsy report and supported plaintiff's allegations that coroner
14 deliberately lied and gave false testimony in order to cover up his
15 incompetency, thereby proximately causing plaintiff's arrest and prosecution).

16      Plaintiff also appears to be claiming that Defendants' policies
17 unreasonably restricted the amount of legal materials he was permitted to keep
18 in his possession and/or locker,[7] and, as a result of that policy and the
19 searches, he had to send excess materials either to the property room, home,
20 or have them destroyed. (Id. at 12-13.) These conclusory allegations also fail
21 to state a claim for an unreasonable "seizure" of Plaintiff's materials by
22 Defendants.

23      Based on the foregoing, the Court finds that Plaintiff's allegations, even
24 when taken as true, are insufficient to state a Fourth Amendment claim against
25 Defendants.

26 _____

27      [7] It appears he may have been allowed to keep up to 2.2 cubic feet of
28 paperwork. (See SAC at 12.)

11

1

### 3.    Claim 3:  Retaliation.[8]

2    The Ninth Circuit has held that within the prison context, a viable claim

3    of First Amendment retaliation entails five basic elements:  (1) an assertion

4    that a state actor took some adverse action against an inmate; (2) because of

5    (3) that prisoner's protected conduct, and that such action (4) chilled the

6    inmate's exercise of his Constitutional rights, and (5) the action did not

7    reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408

8    F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449

9    (9th Cir. 2000) and Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994)).

10   The Supreme Court recently has held that a § 1983 claim for retaliation

11   requires the plaintiff to show that the defendant acted with retaliatory animus

12   and lacked probable cause to take the allegedly retaliatory action.  Hartman v.

13   Moore, 547 U.S. 250, 126 S. Ct. 1695, 1702-03, 1707, 164 L. Ed. 2d 441

14   (2006).  Plaintiff bears the burden of pleading and proving the absence of a

15   "legitimate correctional goal."  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.

16   2003).

17   Defendants contend that Plaintiff's claim fails because he has failed to

18   state the nature of the alleged retaliation.[9]  (MTD at 25.)  The Court agrees

19   that Plaintiff has failed to state a claim for retaliation but disagrees as to the

20   reason.  Here, Plaintiff makes clear the nature of the alleged retaliation – he

21   claims he was threatened with reductions in his access level, actually had his

22   access level reduced, and was subjected to unreasonable searches.  What

23   Plaintiff fails to make clear is the nature of the protected conduct that was

24   being retaliated against – as best the Court can glean, he appears to claim that

25

26   [8] This claim is raised in the SAC under Claim II.  (SAC at 12.)

27   [9] Defendants "surmise" that Plaintiff might be alleging he was moved
28   from one unit to another as retaliation relating to his medical injuries.  (Id.)

1  the retaliation occurred as a result of the extra burden his medical condition
2  placed on the staff.  (See SAC at 12; Opp'n at 24, 35.)  This is not, however,
3  any sort of Constitutionally protected conduct.  Nor has Plaintiff pleaded that
4  the actions taken by Defendants chilled the exercise of his Constitutional
5  rights,[10] failed to reasonably advance a legitimate correctional goal, or were
6  not tailored narrowly enough to achieve such a goal.

7        Based on the foregoing, the Court finds that Plaintiff's allegations, even
8  when taken as true, are insufficient to state a retaliation claim against
9  Defendants.

10       **4.   Claim 4:  Deliberate Indifference.[11]**

11            **a. Non-Supervisory Defendants.**

12       To establish an Eighth Amendment claim that prison authorities
13  provided inadequate medical care, Plaintiff must show that Defendants were
14  deliberately indifferent to his serious medical needs.  Helling v. McKinney,
15  509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); Estelle v. Gamble,
16  429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed 2d 251 (1976); McGuckin v. Smith,
17  974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX
18  Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Deliberate
19  indifference may be manifested by the intentional denial, delay, or
20  interference with a plaintiff's medical care, or by the manner in which the
21  medical care was provided.  See Estelle, 429 U.S. at 104-05; McGuckin, 974
22  F.2d at 1059.

23       Furthermore, the defendant must purposefully ignore or fail to respond

24  _____

25       [10]  In fact, Plaintiff admits that as a result of the alleged retaliation he has
26  "filed numerous Patients' Rights Complaints" (SAC at 10), not to mention the
27  Complaint, FAC, and SAC herein.

28       [11]  This claim is raised in the SAC under Claim III.  (SAC at 14.)

13

to a plaintiff's pain or medical needs. McGuckin, 974 F.2d at 1060. Plaintiff must allege that, subjectively, the defendant had a "sufficiently culpable state of mind" when medical care was refused or delayed. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (citing Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)). A defendant must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Thus, an inadvertent failure to provide adequate medical care, mere negligence or medical malpractice, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute an Eighth Amendment violation. See Estelle, 429 U.S. at 105-07; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Prison officials violate their obligation by intentionally delaying access to medical care. Clement, 298 F.3d at 905 (quoting Estelle, 429 U.S. at 104-05).

Here, Plaintiff alleges that all Defendants acted with deliberate indifference to his serious medical needs, providing him untimely, inadequate, and negligent medical care and treatment, such that his original injury "contributed to, and exacerbated, an ancillary medical problem to such an extent that Plaintiff required surgery." (SAC at 14.) For each individual Defendant against whom he brings this claim, Plaintiff provides a short statement of their actions allegedly supporting this claim. (Id. at 14-22.) Exhibit A to the SAC also provides additional detailed information with respect to certain Defendants[12] regarding Plaintiff's medical indifference

---

[12] Specifically, the Court found additional allegations relating to

(continued...)

1    claim.

2    **b. Supervisory Defendants and Respondeat Superior.**

3    The Ninth Circuit has noted three ways in which supervisory liability is

4    imposed against a supervisory official in his individual capacity for civil

5    rights violations under § 1983: (1) for his "own culpable action or inaction in

6    the training, supervision, or control of his subordinates;" (2) for his

7    "acquiesce[nce] in the constitutional deprivations of which [the] complaint is

8    made;" or (3) for conduct that showed a "reckless or callous indifference to

9    the rights of others." Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991)

10   (internal citations omitted). In other words, supervisory liability is grounded

11   on either the supervisor's personal involvement in the unconstitutional

12   conduct or through conduct that amounts to condonation or tacit

13   authorization. Id. at 646.

14   With respect to alleged supervisory Defendants Hunter, Judd, Gomez,

15   French, Lapp, Shelton, Walters, Moore, Lee, Janice, Griffith, Picanso,[13] and

16   Donahue,[14] Plaintiff generally alleges that these Defendants were complicit in

17   failing to ensure that he received prompt, therapeutic, and adequate medical

18   treatment, caused him to suffer by their actions or inactions, and failed to

19   protect him from verbal and medical neglect and abuse by ASH staff, thereby

20   violating his Constitutional rights. Such theories of liability, if true, would

21   impute personal liability upon the supervisory Defendants without having to

22

23   [12](...continued)

24   Defendants Judd, French, Hunter, Staib, Akhaven, Shelton, Coyle, Lapp,

25   Ornelas, and Donahue in Exhibit A to the SAC.

26   [13] Identified by Defendants as Micanso. (MTD at 9.)

27   [14] These are the individuals Defendants Plaintiff claims are the

28   supervisory Defendants.

1   rely on a theory of vicarious liability.[15]  Where, as here, there is a set of facts
2   that, if proven, would entitle Plaintiff to relief, dismissal for failure to state an
3   Eighth Amendment claim on grounds of respondeat superior is improper.
4         Under the liberal pro se pleading standards, the Court finds these
5   allegations sufficient to state a claim for deliberate indifference against all
6   Defendants.
7         **5.    Claim 5 - Fourteenth Amendment Due Process Claims.**[16]
8         In this claim, Plaintiff alleges that his substantive and procedural due
9   process rights were denied by Defendants Hunter, Gomez, and French who
10  failed to respond to his formal complaints. (SAC at 23.)  He also alleges that
11  Defendant Towle deprived him of his due process rights when he failed to
12  notify the pain management team of his decision to terminate Plaintiff's
13  prescribed and approved pain medication. (Id. at 24.)  Finally, he alleges that
14  reductions in his access level and unannounced searches were imposed as
15  punishment for his medical condition placing an extra burden on staff. (Id. at
16  14.)
17        Because Plaintiff's situation is generally analogous to that of a pretrial
18  detainee, the imposition of punishment triggers substantive due process
19  protection.  See Bell, 441 U.S. at 535 ("under the Due Process Clause, a
20  detainee may not be punished prior to an adjudication of guilt in accordance
21  with due process of law"); Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir.
22

23        [15] That is not to say that Plaintiff will be able to prove his claims.  At
24  this stage of pleading, however, all that is necessary is that Plaintiff have
    sufficiently alleged the Defendants' role in the alleged Constitutional violations
25  to survive the motion to dismiss.  See Hydrick v. Hunter, 500 F.3d 978, 988
26  (9th Cir. 2007) ("Hunter").

27        [16] This claim is raised in the SAC under Claims I, III, and IV.  (SAC at
28  10, 14, 23.)

16

1    1996) ("pretrial detainee may not be punished without a due process
2    hearing"); see also Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002)
3    ("pretrial detainee cannot be placed in segregation as a punishment for a
4    disciplinary infraction without notice and an opportunity to be heard").  A
5    pretrial detainee, however, may be subjected "to the restrictions and
6    conditions of the detention facility so long as those conditions and restrictions
7    do not amount to punishment," Bell, 441 U.S. at 536-37, within the bounds of
8    professional discretion.  Youngberg, 457 U.S. at 321-22.  There is no
9    constitutional violation if the "restrictions are but an incident of some other
10   legitimate government purpose." Simmons, 318 F.3d at 1160 (quoting Bell,
11   441 U.S. at 535).

12          Plaintiff claims that his substantive due process rights were violated by
13   Defendants Hunter, Gomez, and French who failed to protect him from the
14   alleged deprivations he endured (e.g., threatened loss of access level, loss of
15   access level, restrictions).  Here, even accepting Plaintiff's factual allegations
16   as true and construing them in the light most favorable to Plaintiff, the Court
17   finds that Plaintiff's SAC fails to adequately allege a substantive due process
18   claim against the Defendants.

19          Plaintiff's allegations of a temporary loss of privileges, unannounced
20   searches, and restriction on the amount of paperwork he is permitted to keep
21   in his room, amount to a mere "de minimis level of imposition with which the
22   Constitution is not concerned." See Bell, 441 U.S. at 539, n.21; Sandin v.
23   Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)
24   (holding that due process protections are implicated only by a prison action
25   that "imposes atypical and significant hardship on the inmate in relation to the
26   ordinary incidents of prison life"); Tesch v. County of GreenLake, 157 F.3d
27   465, 476 (7th Cir. 1998) (finding no substantive due process violation based
28   on de minimis allegations that prison administrators denied disabled pretrial

1   detainee's requests for assistance in dressing, getting water, and getting into
2   bed).
3          The Supreme Court has recognized that "[n]ot every disability imposed
4   during pretrial detention amounts to 'punishment' in the constitutional sense."
5   Bell, 441 U.S. at 537. Moreover, "prison administrators . . . should be
6   accorded wide-ranging deference in the adoption and execution of policies
7   and practices that in their judgment are needed to preserve internal order and
8   discipline and to maintain institutional security." Id. at 547. Thus, the mere
9   fact that Plaintiff suffered a temporary loss of privileges, or was subjected to
10  random searches of his property, is insufficient to satisfy his burden of
11  alleging that he was subjected to "'punishment' in the constitutional sense."
12  Id. at 537; see Bowman v. City of Middletown, 91 F. Supp. 2d 644, 664
13  (S.D.N.Y. 2000) (no due process violation where claim of denial of
14  commissary privileges for five days, without a hearing, was found to be a de
15  minimis imposition).
16         Moreover, in determining whether the substantive due process rights of
17  one involuntarily committed have been violated, the Court must weigh "the
18  individual's interest in liberty against the State's asserted reasons for
19  restraining individual liberty." Youngberg, 457 U.S. at 320. The Supreme
20  Court, however, also held that, when considering challenges to conditions in
21  state institutions:

22         [C]ourts must show deference to the judgment exercised by a
23         qualified professional. By so limiting judicial review of challenges
24         to conditions in state institutions, interference by the federal
25         judiciary with the internal operations of these institutions should be
26         minimized. . . . Moreover, there certainly is no reason to think
27         judges or juries are better qualified than appropriate professionals
28

1    in making such decisions. . . . For these reasons, the decision, if
2    made by a professional . . ., is presumptively valid; liability may be
3    imposed only when the decision by the professional is such a
4    substantial departure from accepted professional judgment, practice
5    or standards as to demonstrate that the person responsible actually
6    did not base the decision on such judgment.

7    Youngberg, 457 U.S. at 322-323 (citations and footnotes omitted).  Reviewed
8    under these standards, ASH's challenged procedures clearly pass
9    Constitutional muster.  Moreover, Defendant Towle's decision to discontinue
10   Plaintiff's pain medicine is nothing more than an action taken in the
11   professional judgment of a medical professional.

12       Psychiatric hospitals, no less than any other detention facilities, must
13   maintain internal security and assure the safety of other patients and their own
14   staff.  ASH's regulations limiting a patient's storage area and its policy of
15   unannounced searches for contraband rationally further these purposes.  See,
16   e.g., Mitchell v. Dupnik, 75 F.3d 517, 523 (9th Cir. 1996) (pretrial detainee
17   had no privacy right to be present during cell search).

18
19       Finally, Plaintiff's conclusory allegations that Defendants Hunter,
20   Gomez, Judd, and French failed to respond to his formal complaints (see SAC
21   at 11, 23-24), without more, do not constitute sufficient facts to support a
22   procedural due process violation.  To the extent Plaintiff may be trying to
23   allege that hearings should have been held prior to access level reductions, if
24   any, as discussed above, these restrictions were based on the exercise of
25   professional judgment of ASH personnel and are entitled to deference.

26       Based on the foregoing, the Court finds Plaintiff has failed to state
27   sufficient facts to state a claim for Fourteenth Amendment procedural or
28   substantive due process violations.

**D.   Qualified Immunity.**

Defendants claim they are entitled to qualified immunity in their individual capacities.

Qualified immunity shields a public official from a suit for damages if, under the plaintiff's version of the facts, a reasonable officer in the defendant's position could have believed that his or her conduct was lawful in the light of clearly established law and the information the official possessed at the time the conduct occurred. Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Schwenk v. Hartford, 204 F.3d 1187, 1195-96 (9th Cir. 2000). The qualified immunity standard "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

When determining whether a public official is entitled to qualified immunity, the Court employs a two-step process. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); see also Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002) (clarifying the qualified immunity analysis for a claim under the Eighth Amendment). If no Constitutional right would have been violated if the facts were as alleged, then "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

If, however, "a violation could be made out," the next step is to determine "whether the right was clearly established." Id. This is "a two-part

20

1   inquiry:  (1) Was the law governing the state official's conduct clearly

2   established?  (2) Under that law could a reasonable state official have

3   believed his conduct was lawful?"  Estate of Ford, 301 F.3d at 1050 (quoting

4   Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001)).  The determination of

5   whether the law was clearly established "must be undertaken in light of the

6   specific context of the case."  Saucier, 533 U.S. at 201.  "The relevant,

7   dispositive inquiry in determining whether a right is clearly established is

8   whether it would be clear to a reasonable officer that his conduct was

9   unlawful in the situation he confronted."  Id. at 202; see also Hope v. Pelzer,

10   536 U.S. 730, 739-40, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (the law

11   must provide officials with "fair warning" that their conduct was

12   unconstitutional); Harlow, 457 U.S. at 818 ("If the law at that time was not

13   clearly established, an official could not reasonably be expected to anticipate

14   subsequent legal developments, nor could he fairly be said to 'know' that the

15   law forbade conduct not previously identified as unlawful.").

16       Based on the Court's determination that Plaintiff has failed to

17   sufficiently plead a violation of clearly established Constitutional rights with

18   respect to Claims 1, 2, 3, and 5 as discussed above, the Court need not

19   determine whether Defendants are entitled to qualified immunity on these

20   claims.  With respect to Claim 4, brought under the Eighth Amendment and

21   alleging deliberate indifference, the law is clearly established that SVPs are

22   entitled to adequate medical care, and a reasonable state official would not

23   have believed it lawful to exhibit deliberate indifference to Plaintiff's serious

24   medical needs.  Accordingly, Defendants are not entitled to qualified

25   immunity on this claim.

26 **E.**     **The SAC Is Vague and Ambiguous.**

27

28       Based on the discussions above, the Court agrees with Defendants that

21

the SAC is vague and ambiguous with respect to all claims except the Eighth
Amendment deliberate indifference claim.

**F.      The SAC Seeks Improper Relief.**

       Defendants claim the SAC asks the Court to "issue orders to non-
parties seeking general relief affecting Plaintiff." (MTD at 28 (<u>citing</u> SAC at
6).)  Defendants claim the requests should be stricken because Defendants,
sued in their individual capacities, "cannot provide the relief requested."  The
Court assumes Defendants are contending that some or all of Plaintiff's
requests for injunctive or declaratory relief should be stricken.  Because the
Court is dismissing the SAC with leave to amend, it declines to address this
issue herein.

**G.      Consolidation Is Not Warranted.**

       Defendants have filed a motion to stay or consolidate Plaintiff's
pending complaint with <u>Hydrick v. Wilson</u>, CV 98-7167 TJH (RNB), a class
action complaint pending in this Court.

       A district court may dismiss an individual's claims which duplicate
allegations and requests for relief in a pending class action in which a plaintiff
is a class member.  <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93 (9th Cir. 1979).
However, a district court should not dismiss an individual's claims if the
allegations or request for relief go beyond the pending class action.  <u>Id.</u> at
893.

       Although some of the claims in Plaintiff's SAC are similar to those set
forth in the first amended complaint in <u>Hydrick v. Wilson</u>, a copy of which is
attached to Defendants' Motion to Dismiss, a comparison of both establishes
that Plaintiff's allegations with respect to those claims bear little resemblance
to those in the pending <u>Hydrick</u> class action.  Plaintiff's SAC contains

allegations and claims against twenty-five Defendants, twenty-four of whom are not even named as defendants in the <u>Hydrick</u> class action.[17]  Moreover, his SAC contains allegations and claims for relief not duplicated in or related to those brought in the <u>Hydrick</u> class action complaint.[18]  Accordingly, after review of the SAC and comparison with the claims brought in <u>Hydrick v. Wilson</u>, the Court finds that the issues alleged herein are not sufficiently similar to the issues in <u>Wilson</u>.  Thus, this matter should not be consolidated with <u>Wilson</u>.

## H.     **The SAC Should Be Dismissed with Leave to Amend.**

Although the Court is extremely dubious about whether the SAC's deficiencies can be overcome, the Court recommends that Plaintiff be afforded the opportunity to attempt to do so.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a <u>pro se</u> litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

### V.

### <u>ORDER</u>

Based on the foregoing, the Court grants in part and denies in part Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and hereby dismisses the SAC with leave to amend.  Specifically, the Court rules as follows:

(1)     Defendants' Motion to Dismiss with respect to Claims 1,

---

[17]  Only Defendant Hunter is named in both actions.

[18]  For instance, the class action complaint contains no claim for deliberate indifference as to medical treatment or for retaliation due to an onerous medical condition.

23

2, 3, and 5 is GRANTED, and the SAC is dismissed with leave to amend;

(2)  Defendants' Motion to Dismiss with respect to Claim 4 is DENIED without prejudice;

(3)  Defendants' Request for a More Definite Statement is DENIED as moot; and

(4)  Defendants' Motion to Consolidate or Stay is DENIED without prejudice.

If Plaintiff still wishes to pursue this action, he shall have thirty (30) days from the date of this Order within which to file a Third Amended Complaint, attempting to cure the defects in the Second Amended Complaint. The Third Amended Complaint shall be complete in itself and must remedy the deficiencies discussed including compliance with the Federal Rules of Civil Procedure. Plaintiff may not use "et al." in the caption but must name each Defendant against whom claims are stated. Furthermore, Plaintiff must use the blank Central District Civil Rights Complaint form accompanying this order, must sign and date the form, must completely and accurately fill out the form, and must use the space provided in the form to set forth all of the claims that he wishes to assert in his Fourth Amended Complaint. The Clerk is directed to provide Plaintiff with a blank Central District Civil Rights Complaint form. The Third Amended Complaint shall not refer to the previously dismissed Complaints.

/ / /

/ / /

/ / /

/ / /

1       Failure to comply with these requirements may result in the dismissal of

2   this action for failure to prosecute and/or failure to comply with a court order.

3   Failure to remedy the deficiencies discussed may also result in a

4   recommendation that the action be dismissed.

**IT IS SO ORDERED.**

DATED: June *19*, 2008

                                    HONORABLE OSWALD PARADA
                                    United States Magistrate Judge